UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT

| | |
|---|---|
| CHESAPEAKE LOUISIANA, L.P., ET AL. | CIVIL ACTION NO. 12-2963 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| INNOVATIVE WELLSITE SYSTEMS, INC., ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is Defendant Petroleum Products & Services, Inc. d/b/a Wellhead Distributors International's ("WDI") Motion to Determine Choice of Law. See Record Document 125. WDI argues that Texas law should apply to Plaintiffs' product liability claims. See id. Plaintiffs Chesapeake Louisiana, L.P., Chesapeake Operating, Inc., Larchmont Resources, L.L.C., Ivory Working Interest, L.P., Comstock Oil & Gas–Louisiana, L.L.C., Petrohawk Properties, L.P., PXP Louisiana L.L.C., Certain Underwriters at Lloyd's, London, Subscribing to Certificates of Insurance Nos. 205041, 205043, JLWCTF3359, JLWCTF3360, and BD-CJP-388, Navigators Insurance Company, Houston Casualty Company, and Gotham Insurance Company ("Plaintiffs") have opposed the motion, arguing that Louisiana law applies to the instant matter. See Record Document 139.

For the reasons set forth below, the Court finds that Louisiana law applies. WDI's motion is, therefore, **DENIED**.

## BACKGROUND

This cases arises from a natural gas well blowout that occurred on November 18, 2009, at the Sumner 25-13-14 H-1 oil and gas well ("Sumner 25 well" or "the well") located in DeSoto Parish, Louisiana. The Sumner 25 well is owned by Chesapeake Louisiana, L.P.

The well is operated by Chesapeake Operating, Inc.

At the time of the incident, Defendant Innovative Wellsite Systems, Inc. ("Innovative") was replacing lock screws in a tubing head on the Sumner 25 well. Plaintiffs allege that the lock screw assemblies on the Sumner 25 well were defective. They further allege that the tubing spool and lock screw assemblies were manufactured by Defendant Jiangsu Jinshi Machinery Group Company, Ltd. ("JMP"); sold by Defendant China Petroleum Technology & Development Company ("CPTDC"); distributed by WDI to Innovative; and supplied by Innovative to Chesapeake.

WDI argues that "Texas law should apply to Plaintiffs' claims because, under Louisiana's choice of law principles, Louisiana has little, if any, contacts with the events giving rise to this suit and because Texas' policies would be most seriously impaired if its law were not applied." Record Document 125-1 at 3. Conversely, Plaintiffs contend that Louisiana law applies because Chesapeake acquired the product, i.e., the lock screw assembly, at the Sumner 25 well in Louisiana and the injury occurred in Louisiana. See Record Document 139 at 5-9. Additionally, Plaintiffs maintain that Louisiana law applies because Louisiana's policies would be most impaired if its law were not applied. See id. at 9-13.

## LAW AND ANALYSIS

**I.   Choice of Law Principles.**

The parties do not dispute that Louisiana's choice of law rules apply. See Record Documents 125, 139, & 144. The Louisiana Civil Code provides specific and residual rules for determining choice of law in product liability cases. Article 3545 provides:

> Delictual and quasi-delictual liability for injury caused by a product, as well as

>damages, whether compensatory, special, or punitive, are governed by the law of this state: (1) when the injury was sustained in this state by a person domiciled or residing in this state; or (2) when the product was manufactured, produced, or acquired in this state and caused the injury either in this state or in another state to a person domiciled in this state.
>
>The preceding paragraph does not apply if neither the product that caused the injury nor any of the defendant's products of the same type were made available in this state through ordinary commercial channels.
>
>All cases not disposed of by the preceding paragraphs are governed by the other Articles of this Title.

La. C.C. Art. 3545. Article 3542 provides:

>Except as otherwise provided in this Title, an issue of delictual or quasi-delictual obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
>That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the events giving rise to the dispute, including the place of conduct and injury, the domicile, habitual residence, or place of business of the parties, and the state in which the relationship, if any, between the parties was centered; and (2) the policies referred to in Article 3515, as well as the policies of deterring wrongful conduct and of repairing the consequences of injurious acts.

La. C.C. Art. 3542. Article 3515 provides:

>Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
>That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

La. C.C. Art. 3515.

**II. Analysis.**

This case turns on the interpretation of the second clause of Article 3545, which states:

> Delictual and quasi-delictual liability for injury caused by a product, as well as damages, whether compensatory, special, or punitive, are governed by the law of this state . . . (2) when the product was manufactured, produced, or acquired in this state and caused the injury either in this state or in another state to a person domiciled in this state.

La. C.C. Art. 3545. There is no dispute that the lock screw assembly was not manufactured or produced in Louisiana. However, WDI argues that the lock screw assembly was "acquired" in Texas, while Plaintiffs contend Chesapeake "acquired" the lock screw assembly from Innovative at the Sumner 25 well in Louisiana.

The parties further disagree as to the proper interpretation of "caused the injury either in this state or in another state *to a person domiciled in this state*," namely whether the phrase "to a person domiciled in this state" applies to both "in this state" and "in another state." As applied to the instant matter, WDI reads the statute to require that the product caused the injury in this state to a person domiciled in this state. Conversely, Plaintiffs read the statute to simply require injury in this state, arguing that the phrase "to a person domiciled in this state" only applies when the product caused the injury "in another state."

Here, the Court first finds that the lock screw assembly was acquired in Louisiana. There appears to be no dispute that the lock screw assemblies at issue were manufactured in China and then received in the United States by a subsidiary of CPTDC. They were then distributed to CPTDC's distributor, WDI, in Texas, and ultimately supplied to Chesapeake Operating, Inc. ("COI"), the well's operator, pursuant to a Master Services Agreement. The divergent position of the parties relates to acquisition, that is, whether COI acquired the product in Louisiana.

In their opposition, Plaintiffs argue that COI acquired the lock screw assembly at the Sumner 25 well in Louisiana. They specifically note that COI's well superintendent ordered the equipment from the Sumner 25 well site in Louisiana; Innovative delivered and installed the equipment at the well site; upon delivery of the equipment, a delivery ticket was signed by a COI representative on location; and Innovative invoiced COI only after delivery of the equipment. See Record Document 139, Exhibit B. Plaintiffs further observe that the object of the contractual relationship between COI and Innovative was the supply, installation, and servicing of lock screw assemblies and other equipment on Haynesville Shale wells in Louisiana. See id., Exhibit A; Record Document 139 at 7-8. The Court finds these facts are sufficient to distinguish the instant matter from New Orleans Assets, L.L.C., v. Carl E. Woodward, L.L.C., 278 F.Supp.2d 776 (E.D. La. 2003), wherein the court held that mere installation of a product in Louisiana did not establish that such product was acquired in Louisiana. Thus, the Court finds that the lock screw assembly at issue in this case was acquired in Louisiana, not Texas.

As to the interpretation surrounding the phrase "to a person domiciled in this state," the Court turns to Louisiana's rules of statutory interpretation. In Arabie v. CITGO Petroleum Corp., 2010-2605 (La. 3/13/12), 89 So.3d 307, the Louisiana Supreme Court analyzed whether Louisiana law or another state's laws should be applied with regard to punitive damages. The Arabie court reasoned:

> The fundamental question in all cases involving statutory interpretation is legislative intent. Further, according to the general rules of statutory interpretation, our interpretation of any statutory provision begins with the language of the statute itself. ***While the Official Revision Comments are not the law, they may be helpful in determining legislative intent.***

Id. at 312 (internal citations omitted) (emphasis added).

Here, the language in clause two of Article 3545 is slightly ambiguous and the Court finds the official revision comments to be particularly instructive and persuasive. Comment (f) provides:

> (f) Injury and acquisition in Louisiana. Here, the application of Louisiana law is justified by the need to ensure that products that are marketed in this state and which actually cause injury here conform to the standards prescribed by the law of this state. ***This need exists whether or not the injured person is a Louisiana domiciliary or a domiciliary of another state.*** Again, any potential argument of unfair surprise by the defendant is adequately taken care of by the defense provided in the second paragraph.

La. C.C. Art. 3545 cmt. (f) (emphasis added). Comment (c) further explains:

> (c) Injury in Louisiana. . . . Clauses (1) and (2) of the first paragraph of this Article identify those cases in which it is believed that the policies of this state would be most seriously impaired if its law were not applied. These are the cases in which, in addition to being the place of injury, Louisiana is also either: (a) the domicile or residence of the victim; ***or*** (b) the place of manufacturing of the product; ***or (c) the place of acquisition of the product. In these cases, Louisiana law should apply regardless of the factual contacts of the other state or states.***

Id., cmt. (f) (emphasis added). Thus, the Court holds that regardless of the injured person's domicile, Article 3545 requires application of Louisiana law to this case because the injury occurred in Louisiana and the product was acquired in Louisiana.[1] WDI's motion is,

---

[1] In interpreting Article 3545, other courts within the Western District of Louisiana have held:

> Under Louisiana's Conflict of Laws provisions, the issue of damages (including punitive damages) in a products liability case is governed by the law of Louisiana when, as here, 1) the injury was sustained in Louisiana by a person domiciled or residing in Louisiana; or 2) when the product was acquired in Louisiana and caused injury in Louisiana or injured someone domiciled in this state.

Morris v. Wyeth, Inc., No. 09-0854, 2009 WL 5342507, at *2 n. 4 (W.D. La. Nov. 18, 2009); King v. Bayer Pharmaceuticals Corp., No. 09-0465, 2009 WL 2135223, *5 n. 9 (W.D. La. July 13, 2009); Williams v. Pfizer, Inc., No. 08-1222, 2009 WL 1362783, at *4 n. 12 (W.D.

therefore, **DENIED**.[2]

## CONCLUSION

Based on the foregoing, the Court finds that Louisiana law applies in the instant matter, as the lock screw assembly was acquired in Louisiana and the injury occurred in Louisiana. Accordingly, WDI's Motion to Determine Choice of Law (Record Document 125), which sought the application of Texas law, is **DENIED**.

**IT IS SO ORDERED**.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 6th day of November, 2014.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE

---

La. May 14, 2009); Lofton v. Pfizer, Inc., No. 08-1224, 2009 WL 1390829, at *4 n. 13 (W.D. La. May 14, 2009).

[2]Because this case was "disposed of" by Article 3545, the Court did not reach the arguments relating to Articles 3542 and 3515.